**UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Yossef KAHLON, TJ Management Group, LLC, Defendants.**

**Case No. 4:12–cv–517**

United States District Court, E.D. Texas, Sherman Division.

Signed September 30, 2015

John E. Birkenheier, Jonathan Stephen Polish, Timothy S. Leiman, U.S. Securities & Exchange Commission, Chicago, IL, for Plaintiff.

David Steven Coale, Jeffrey Mark Tillotson, Lynn Tillotson Pinker & Cox, LLP, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

RICHARD A. SCHELL, UNITED STATES DISTRICT JUDGE

Pending before the court are Plaintiff's Motion for Summary Judgment (Dkt.43), Defendants' Amended Response (Dkt.55–1), and Plaintiff's Reply (Dkt.52); and Defendants' Motion for Summary Judgment (Dkt.46), Plaintiff's Response (Dkt.49), Defendants' Reply (Dkt.50), and Plaintiff's Sur–Reply (Dkt.54).

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (Dkt.43) is **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion for Summary Judgment (Dkt.46) is **DENIED.**

## I. BACKGROUND

Jossef Kahlon a/k/a Yossef Kahlon, a resident of New York, is the sole owner and managing member of TJ Management Group, LLC (TJM), a New York limited liability company with its principal place of business in New York, New York.[1] Around 2005, TJM began functioning as a private equity group that purchased stock in private offerings and then sold the shares on the public market. In August 2005, TJM registered in Texas as a foreign limited liability company. TJM has a registered agent in Texas and a Texas mailing address, but the only business TJM transacted in Texas was the purchase of a piece of vacant property near downtown Dallas on which it facilitated maintenance and repairs. Between June 2008 and July 2010, TJM purchased penny stocks from eleven companies at a price below market rate and then expeditiously sold those stocks in the public market at market rates. Neither the initial purchase nor the re-sales of the stocks were registered in accordance with the Securities Act of 1933.[2] The SEC contends that the sales violated Sections 5(a) and 5(c) of the Securities Act, "which prohibit selling or offering to sell unregistered securities unless an exemption from the registration requirement applies."[3] The SEC moves for summary judgment and seeks a permanent injunction "(a) permanently restraining and enjoining Defendants from violating Section 5; (b) ordering Defendants to disgorge their ill-gotten gains with prejudgment interest thereon; (c) ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act of 1933 (the 'Securities Act') [15 U.S.C. § 77t(d) ]; and (d) permanently prohibiting Defendants from participating in an offering of penny stock, pursuant to Section 20(g) of the Securities Act of 1933 [15 U.S.C. § 77t(g) ]."[4] Defendants contend the transactions are exempt from registration requirements under Rule 504 of Regulation D (17 C.F.R. § 230.504(b)(1)(iii)) and the Texas Securities Act[5] and move for summary judgment on this affirmative defense.

---

1. For ease of reference, the court refers to the Defendants collectively.

2. 15 U.S.C. § 77e.

3. 15 U.S.C. §§ 77e(a), (c); *S.E.C, v. Luna,* 2:10–CV–2166–PMP–CWH, 2014 WL 794202, at *1 (D.Nev. Feb. 26, 2014).

4. Dkt. 1 ¶ 7.

5. 7 Tex. Admin. Code §§ 109.4, 107.2 (State

## II. LEGAL STANDARD

 Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." [6] Substantive law identifies which facts are material.[7] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [8] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." [9] Therefore, in deciding whether to grant a motion for summary judgment, the court must consider if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." [10] The court must construe all facts and inferences in the light most favorable to the nonmoving party.[11] When the nonmovant bears the burden of proof, the movant may meet its burden by showing that there is no admissible evidence to support the nonmovant's claim.[12] Once the movant has met this burden, the burden shifts to the nonmovant to offer evidence to show there is a genuine dispute as to a material fact with respect to the claims raised. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleading." [13] "Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." [14] The nonmovant must look beyond the pleadings and designate specific evidence in the record to show that there is a genuine issue for trial.[15] The citations must be specific because the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact.[16]

## III. ANALYSIS

 To establish a *prima facie* violation of 15 U.S.C. § 77e(a) and (c), the SEC must show that "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale."[17] Once the SEC establishes its *prima facie* case, the burden shifts to Defendant to prove that the offer or sale falls

Secs Bd.).

6. FED. R. CIV. P. 56(a) (emphasis added).

7. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

8. *Id.*

9. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

10. *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505.

11. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir.2000).

12. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Payne v. Sw. Bell Tel., L.P.*, 562 F.Supp.2d 780, 783 (E.D.Tex.2005).

13. *Celotex*, 477 U.S. at 322 n. 3, 106 S.Ct. 2548; *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

14. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) (internal quotation marks omitted).

15. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir.1996).

16. E. D. TEX. CIV. R. CV-56(c).

17. *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir.1972).

under an exemption to the registration requirements.[18]

█ It is undisputed that Defendants bought and sold stocks that were not registered utilizing the facilities of interstate commerce. Therefore, the SEC has made out its *prima facie* case of a violation of Section 5 of the Securities Act, and the court considers Defendants' affirmative defense. Defendants assert that the transactions at issue are exempt from the Securities' Act registration requirements under Rule 504(b)(1)(iii) of Regulation D and Texas law. The SEC contends that as applied by Defendants no such exemption exists under these facts. "Because defendants bear the burden of proof of establishing an exemption, for the SEC to prevail on [its] summary judgment motion, it need only point to a lack of evidence that would enable a reasonable jury to find that defendants qualify for an exemption."[19]

█ "A defendant can prove an exemption applies by showing either (1) the intrastate exemption applies under section 3(a)(11) of the Securities Act, 15 U.S.C. § 77c(a)(11), (2) the private placement exemption applies under section 4(2) of the Securities Act, 15 U.S.C. § 77d(2), or (3) that an exemption under Regulation D, 17 C.F.R. § 230.504–6, applies."[20] Exemptions are narrowly construed to further the purpose of the Act, which is "[t]o provide full and fair disclosure of the character of the securities, and to prevent frauds in the

sale thereof."[21] The court "evaluates form over substance and looks to the economic reality of the transactions at issue."[22]

Rule 504(b)(1)(iii) provides an exemption from registration for offers and sales of securities that are conducted "[e]xclusively according to state law exemptions from registration that permit general solicitation and general advertising so long as sales are made only to 'accredited investors' as defined in § 230.501(a)".[23] "Thus, for a Rule 504(b)(1)(iii) exemption to apply, (a) a security sale or offer must be made *exclusively* according to state law exemptions from registration; (b) these state law exemptions must permit general solicitation and general advertising; and (c) the purchasers of the securities must be 'accredited investors.' "[24] "Securities sold without registration in reliance on this provision are not subject to the limitations on resale established in Rule 502(d) and, as such, are not 'restricted securities.' "[25] But "Regulation D is not available to any issuer for any transaction or chain of transactions that, although in technical compliance with Regulation D, is part of a plan or scheme to evade the registration provisions of the [Securities] Act."[26]

Defendant argues that the exemptions found in 504(b)(1)(iii) and Sections 107.2 and 109.4 of Title 7 of the Texas Administrative Code "mean that an accredited institutional investor, or investors in aggregate, may invest up to $1,000,000 per

---

18. *Id.* at 156; *see also SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901–02 (5th Cir. 1980).

19. *S.E.C. v. Offill*, Civil Action No. 3:07–cv–1643–D, 2012 WL 246061, at *4 (N.D.Tex. Jan. 26, 2012).

20. *S.E.C. v. Earthly Mineral Solutions, Inc.*, 2:07–CV–1057 JCM (LRL), 2011 WL 1103349, at *2 (D.Nev. Mar. 23, 2011).

21. *S.E.C. v. Luna*, No. 2:10–cv–2166–PMP–CWH, 2014 WL 794202, at *8 (D.Nev. Feb. 26, 2014).

22. *Id.*

23. 17 C.F.R. § 230.504(b)(1)(iii).

24. *S.E.C. v. Bronson*, 14 F.Supp.3d 402, 410 (S.D.N.Y.2014) (emphasis added).

25. *Id.* (quoting 72 Fed. Reg. at 45, 133).

26. 17 C.F.R. § 230.500(f).

twelvemonth period in non-reporting companies, which equity investment results in freely-trading shares."[27] The SEC does not dispute the existence of an exemption based on the statutes cited by Defendant, but it does dispute Defendant's interpretation and application of the exemption to these transactions.

█ There is no evidence put forth by Defendant to show that these transactions fall within the exemption from registration under Rule 504(b)(1)(iii). Even though Defendant registered TJM as a foreign corporation in Texas and conducted some business here related to the purchase of a single parcel of real property, there is no evidence that the *transactions* at issue took place *exclusively* under Texas law such that the transactions would be eligible for a Rule 504 exemption. The exemption upon which Defendants rely applies to the offers and sales (or the transactions) themselves, not to the individuals involved in executing the transactions.[28] This court agrees with the analysis of the court in *S.E.C. v. Bronson*, holding that "the language of Rule 504(b)(1)(iii) requires compliance with those state-law exemptions *where* the securities are offered or sold, and rejects Defendants' contention that compliance with one state's exemption requirements is sufficient for federal exemption purposes."[29] The Supreme Court has upheld individual states' authority to enact securities laws precisely because "they only regulated transactions occurring within the regulating States."[30] With the exception of My Vintage Baby, there is no evidence that any of the companies from which Defendant purchased and resold stock has any connection to Texas.[31]

Further, even if the court were to find that the transactions occurred exclusively in accordance with Texas law, Defendant has put forth no evidence to show that he or TJM was an accredited investor at the time of the transactions.[32] There is also no

27. Dkt. 55-1 at 10.

28. 17 C.F.R. § 230.504(b)(1) ("To qualify for exemption under this § 230.504, offers and sales must satisfy the terms and conditions...") (emphasis added); *see also S.E.C. v. Offill*, Civil Action No. 3:07–cv–1643–D, 2012 WL 246061, at *4 (N.D. Tex. Jan. 26, 2012 (assessing exemptions under 15 U.S.C. § 77d(1)).

29. *Bronson*, 14 F.Supp.3d at 415 (emphasis added).

30. *Id.* at 408 (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 641, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982); *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 557–58, 37 S.Ct. 217, 61 L.Ed. 480 (1917)).

31. The court also finds it significant that in its "Securities Subscription Agreement" with My Vintage Baby, Defendant represented that it "has substantial assets and operations in Texas and investment decision involved its presence in Texas...." Dkt. 43-11 ¶ G (emphasis added). Defendant has not put forth any evidence that would show its "investment" in any of these companies had anything to do with its limited business in Texas related to a single parcel of real property. Presumably, the individuals that reviewed these transactions and continued to do business with Defendants while relying on the exemption were depending on Defendants' representations. Nonetheless, the fact that brokerages continued to work with Defendants is not evidence that the transactions at issue qualified for the exemption. Additionally, the SEC has put forth evidence that Kahlon's representation that he was purchasing the stocks as an investment is directly contradicted by his deposition testimony. Dkt. 49 at 9, citing to Dkt. 43-1 at 43.

32. *See* Dkt. 54 at 5. Defendants state that "Defendants established that fact in its [sic] Motion,, and the SEC does not even address that evidence. (*See* Defendants' Motion at 3 ¶ 5)." Paragraph 5 on page 3 of Defendants' motion reads "TJM complied with all requirements—state and federal—of that exemption for all of its Rule 504 transactions, including each of the transactions at issue in this case. In fact, TJM's business grew to have trading accounts with the largest and most sophisticated names in the securities business, such as E*Trade, Citi, Jeffries, Goldman Sachs,

evidence put forward to show that Kahlon limited his resale of the stock to accredited investors under Texas law.

■ Defendant contends that "[t]he strongest argument against the SEC's case revolves around due process, agency overreach and the very real danger that the SEC's unapologetic official policy of 'regulation through enforcement' poses to private investors."[33] Defendant. contends that the fact that the SEC had interviewed and requested documents from Kahlon in connection with two other investigations but did not bring this enforcement action until much later somehow means that the SEC "explicitly permit[ted]" his conduct. Defendant has put forth no evidence showing the SEC had previously interpreted the exemption on which he relies in a manner that is contrary to the interpretation which it asserts here. "As stated by one court, 'neither a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense to a charge of violating Section 5 of the Securities Act." '[34]

Accordingly, Plaintiff's motion for summary judgment with regard to Defendant's liability is **GRANTED** and Defendant's motion for summary judgment with regard to his affirmative defense is **DENIED**. However, the court does not hold that Plaintiff has met its burden of proof on its motion with regard to the remedies. The court finds that there are genuine factual issues with regard to the factors the court must consider in assessing Plaintiff's re-

quests for equitable and injunctive relief. Therefore, Plaintiff's motion for summary judgment with regard to remedies is **DENIED**. The appropriateness of such remedies shall be determined after a trial or evidentiary hearing.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment (Dkt.43) is **GRANTED IN PART** and **DENIED IN PART** and Defendant's Motion for Summary Judgment (Dkt.46) is **DENIED**. The parties are **ORDERED** to confer no later 15 days from the date of this order and submit a *joint* proposed amended scheduling order to govern the remainder of this litigation.

IT IS SO ORDERED.

---

Vert, and Hudson. As depositions of their professionals showed, those trading houses vetted every issuer and every transaction through their own compliance, anti-money laundering, and legal departments. Indeed, E*Trade made a specific investigation into the Texas registration exemption, and continued to do business with TJM for months after that investigation concluded." (citations omitted). None of the evidence cited in this paragraph

relates to Kahlon or TJM's status as an accredited investor under federal or state law.

**33.** Dkt. 54 at 6.

**34.** *U.S, S.E.C. v. ConnectAJet.com, Inc.,* 3:09–CV–1742–B, 2011 WL 5509896, at *4 (N.D.Tex. Nov. 9, 2011) (quoting *S.E.C. v. Friendly Power Co. LLC,* 49 F. Supp. 2d 1363, 1368 (S.D.Fla.1999)).